UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KATHERINE A. DILORENZO,

                Plaintiff,　　　　　　**DECISION AND ORDER**
　　　　　　　　　　　　　　　　　　　　**1:14-cv-00906-MAT**
   -vs-

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                Defendant.

---

## INTRODUCTION

Represented by counsel, Katherine A. Dilorenzo ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

Plaintiff protectively filed an application for DIB on August 29, 2011, alleging that he was disabled commencing August 29, 2011, due to degenerative disc disease, arthritis, nerve damage,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

gastroparesis, depression, and vitamin deficiencies.[2] The applications were denied, and Plaintiff requested a hearing, which was held on April 9, 2013, and July 30, 2013, before Administrative Law Judge Gietel Reich ("the ALJ"). (T.31-51). Plaintiff appeared with counsel at the July hearing and testified, but the ALJ did not call any witnesses. The ALJ issued an unfavorable decision (T.13-30) on August 14, 2013.

The Appeals Council denied Plaintiff's request for review (T.1-6) on August 27, 2014, making the ALJ's decision the final decision of the Commissioner.

Plaintiff then timely commenced this action. The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The record will be discussed in more detail below as necessary to the resolution of this appeal. For the reasons that follow,
the Commissioner's decision is affirmed.

**THE ALJ'S DECISION**

The ALJ followed the five-step procedure established by the Commissioner for evaluating disability claims. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff

---

[2] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

meets the insured status requirements of the Act through December 31, 2015, and had not engaged in substantial gainful activity since August 22, 2011, the alleged onset date.

At step two, the ALJ determined that Plaintiff has the following severe impairments: fibromyalgia and cervicalgia, status post-cervical fusion surgery, gastroparesis, and migraine headaches.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform less than the full range of sedentary work, except that she is limited to lifting/carrying a maximum of ten pounds at a time; sitting for approximately six hours in an eight-hour day; standing/walking for approximately two hours in an eight-hour day; and changing the position of her head frequently, but not constantly.

At step four, the ALJ noted that Plaintiff was a "younger" individual between the ages of 18 and 44, had at least a high school education, and had past relevant work as a cook, server, radio producer, manager, and dispatcher for emergency services. Because the exertional requirements for each of these jobs exceeded

the less-than-sedentary RFC assigned to Plaintiff, she was unable to perform her past relevant work.

At step five, the ALJ referred to Medical-Vocational Rule 201.28 and found that the additional limitations contained in Plaintiff's RFC have little or no effect on the occupational base of unskilled sedentary work. A finding of "not disabled" was therefore appropriate under the framework of Medical-Vocational Rule 201.28.

## SCOPE OF REVIEW

A decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. See 42 U.S.C. § 405(g). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). This deferential standard is not applied to the Commissioner's application of the law, and the district court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). Failure to apply the correct legal standards is grounds for reversal. Id. Therefore, this Court first reviews whether the applicable legal standards were correctly

applied, and, if so, then considers the substantiality of the evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

## DISCUSSION

### I. Erroneous Severity Determination at Step Two

Plaintiff contends that the ALJ erred at step two by concluding that her depression and anxiety were non-severe impairments. (T.19 (finding that Plaintiff's depression with anxiety "do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore non-severe"). Plaintiff asserts that the finding is deficient because "there is no medical opinion evidence to support this conclusion[,]" and, accordingly, "the ALJ should have sought medical expert opinion evidence to determine whether Plaintiff's depression and anxiety were severe or non-severe. . . ." (Pl's Mem. at 19) (Dkt #12-1).

At step two, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment," 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), that "significantly limits [her] physical or mental ability to do work activities," Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see also SSR 85-28, Titles II and XVI: Medical Impairments That Are Not Severe, 1985 WL 56856, at *3-4 (S.S.A. 1985). The claimant bears the burden of proof as to the first four steps, Berry, 674 F.2d at 467, but step two's "severity" requirement is de minimus,

-5-

meant only to screen out the weakest of claims. Dixon v. Shalala, 54 F.3d 1019, 1030 (2d. Cir. 1995). Where, as here, mental impairments are at issue, the severity determination is made through application of a "special technique" set out in 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e). By means of the special technique, the functional effects of a claimant's mental impairments are factored into the step two severity determination. Specifically, the ALJ must "rate the degree of functional limitation" caused by the mental impairment in four areas: (1) "[a]ctivities of daily living;" (2) "social functioning;" (3) "concentration, persistence, or pace;" and (4) "episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ratings applicable to the first three functional areas are "[n]one, mild, moderate, marked, [or] extreme." Id. at §§ 404.1520a(c)(4), 416.920(c)(4). "Episodes of decompensation" are rated on a five-point scale: "[n]one, one or two, three, four or more." Id. "According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' . . . ." Kohler v. Astrue, 546 F.3d 260, 266 (2d Cir. 2008) (citing 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)).

The ALJ first described Plaintiff's limited history of treatment for her alleged mental impairments. In particular, the

ALJ noted that the record did not "reflect continuous mental health treatment, or significant psychiatric symptoms that interfere with [Plaintiff's] functionality." Indeed, the record does not reflect any treatment specifically directed at addressing Plaintiff's alleged anxiety and depression. As the ALJ observed, Plaintiff "never saw a specialist for any mental health condition, nor is there any comprehensive mental status examination in the record that documents abnormal findings."[3]

After discussing the lack of specific treatment Plaintiff received for her mental impairments, the ALJ performed the special technique. The ALJ concluded that Plaintiff had no limitations in her ability to perform activities of daily living; no limitations in the area of social functioning; no limitations in maintaining concentration, persistence, or pace; and had experienced no episodes of decompensation. The ALJ cited to specific items of Plaintiff's testimony or other pieces of evidence in the record to support each special technique finding. Notably, Plaintiff does not raise an evidentiary challenge to any of the ALJ's ratings of Plaintiff's limitations in the three functional areas and the ALJ's finding that she had experienced no functional limitations.

---

[3] There is a September 2012 notation by Joseph Corigliano, D.O., who treated Plaintiff for her body pain, stating that Plaintiff "deals with anxiety and depression." However, Dr. Corigliano did not perform a mental status examination or document any specific symptoms reported by Plaintiff. Nevertheless, he prescribed the anti-depressant Cymbalta® (duloxetine) (Ex. 17F, p. 64-65). Approximately ten months prior to that, Plaintiff obtained a prescription for Xanax from her primary care physician, Helen Suchanick, M.D., who noted that Plaintiff used it sparingly to help her calm down to sleep.

Rather, Plaintiff argues, the treatment evidence in the record "should have prompted the ALJ to secure some sort of medical opinion as to the severity of her depression and anxiety, and how it affected her ability to work. . . ." (Pl's Mem. at 21-22 (citations omitted)). The Court has reviewed the cases Plaintiff cites in support this argument, but finds that they are inapposite. For instance, in Matejka v. Barnhart, 386 F. Supp.2d 198, 209 (W.D.N.Y. 2005), the ALJ was presented with an opinion offered by the claimant's treating psychotherapist that she claimant] is unable to deal with work stresses or to maintain attention and concentration due to depression and pain. The ALJ rejected the treating source's opinion, despite the fact that there was no medical evidence to contradict that opinion. The district court found that, at a minimum, the ALJ should have ordered a psychiatric consultative examination to determine the severity of the claimant's depression, noting that the Commissioner's regulations require that the ALJ "must normally order a consultative examination when '[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved. . . .'" Falcon v. Apfel, 88 F. Supp.2d 87, 91 (W.D.N.Y. 2000) (quoting 20 C.F.R. § 404.1519a(b)(4)). Here, in contrast, the ALJ did not rejected a properly supported expert medical opinion from one of Plaintiff's treating sources; nor was there a conflict, inconsistency, ambiguity or insufficiency in the evidence requiring resolution by

a consultative examiner. Therefore, the Court is unable to conclude that the ALJ failed to apply the correct legal principles at step two of the sequential evaluation. Furthermore, as Plaintiff implicitly concedes, substantial evidence supports the ALJ's special technique findings.

**II. Erroneous Credibility Evidence**

The ALJ discounted, as less than fully credible, Plaintiff's allegations that she cannot stand or walk for more than 15 minutes, cannot sit upright for more than an hour, and cannot hold anything over 5 pounds; that she has constant body pain, which is only relieved when she is under sedation in the hospital; and is that she disabled because she cannot sit upright or concentrate long enough to work. (See T.21, 39, 226, 231). Plaintiff argues that the ALJ's credibility assessment was legally erroneous and unsupported by substantial evidence. (See Pl's Mem. at 23-26).

Where, as here, an individual has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged but the objective evidence does not substantiate the alleged intensity and persistence of the symptoms, the ALJ must consider other factors in assessing the individual's subjective symptoms, including (1) the claimant's daily activities; (2) the nature, duration, frequency and intensity of her symptoms; (3) precipitating and aggravating factors; (4) the type of medication and other treatment or measures which the claimant uses

to relieve pain and other symptoms; (5) treatment other than medication the claimant has received for relief of pain and other symptoms; (6) any other measures used by the claimant to relieve pain and other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "On appeal, the court's proper function is merely to determine whether the appropriate legal standards have been applied and assess whether the [Commissioner]'s findings of fact are supported by substantial evidence." Mimms v. Heckler, 750 F.2d 180, 185–86 (2d Cir. 1984).

Plaintiff At several appointments with Dr. Suchanick, in December 2011, June 2012 and October 2012, the claimant did not report being unable to sit upright, having difficulty walking or having any problems with concentration. Moreover, at each examination, the musculoskeletal exaritination documented that the claimant had a normal range of motion in all areas and no tenderness, decreased strength, sensory deficit, inflanunatory conditions or gait problems (Exhibit 18F, pages 2 -12). The failure to report her allegedly disabiing symptoms detracts from the claimant's credibility. Additionally, while the claimant has alleged that she is unable to work because she has difficulty concentrating, there were no abnormal mental status examinations in the record or documentation of this side effect

Plaintiff contends that in reaching the conclusion that her complaints of severe pain were less than fully credible (T.23), the ALJ stated that Plaintiff's treatment has "significantly helped in alleviating some of her symptoms." Plaintiff asserts that this is a "gross mischaracterization" of the record, but Plaintiff does not dispute that the record reflects substantial improvement in her headaches, mood, fibromyalgia symptoms, and musculoskeletal pain with the prescription medication, Cymbalta® (duloxetine). Plaintiff's argument boils down to a complaint that the ALJ failed to investigate how long Plaintiff actually was able to take Cymbalta®, a medication that was not covered by her insurance carrier. (See T.705; treatment note dated 6/21/13 from Dr. Saikali stating that "unfortunately, insurance carrier will not cover this product"). Dr. Saikali also indicated that his office would "continue to provide her with samples of Cymbalta as often as we can." (T.706). Plaintiff asserts that the ALJ "should have fully evaluated the situation she was in with this medication before he relied on it so heavily in his determination." (Pl's Mem. at 24). Plaintiff offers no authority for such a proposition. The record, as it stood at the time of the ALJ's decision, reflected that Plaintiff was able to obtain Cymbalta samples from Dr. Saikali, and therefore there the ALJ did not mischaracterize the record.

Plaintiff also argues that the ALJ incorrectly concluded that the evidence demonstrated that her migraines[4] improved to the extent she could perform sedentary work. The Court finds that the ALJ's conclusion was supported by substantial evidence. On June 25, 2012, Dr. Joseph F. Corigliano, D.O., P.T., record that, since her diagnosis in April of 2012, and commencement of Lyrica and Tramadol (T.687), Plaintiff was "having significantly less migraine headaches and her pain overall is improving with the use of Lyrica" although she "still has bouts of extreme pain from time to time." (T.695). When Dr. Corigliano saw Plaintiff in October 2012, Plaintiff "report[ed] improvement of her fibromyalgia" symptoms, and she did not present with complaints related to her migraines. (T.593). On March 19, 2013, Dr. Corigliano noted that Plaintiff was "doing reasonably well with her current medications" and had "[n]o new issues or concerns." (T.703). The only diagnoses indicated that day were gastroparesis, fibromyalgia, arthritis, and depression with anxiety. (Id.). On June 21, 2013, Dr. Corigliano reported that Plaintiff "deals with chronic fibromyalgia pain." (T.705). She had no complaints related to migraine headaches and, again, the only diagnoses indicated were gastroparesis, fibromyalgia, arthritis, and depression with anxiety. (Id.). The records also reflect that

---

[4] Some records reflect that most of Plaintiff's headaches were not migraines, but were primarily analgesic rebound headaches or tension type headaches with "occasional migraine headaches." (See T.499-500 (2/27/12 note from neurologist Dr. Steven Dofitas; advising Plaintiff "to cut down on the narcotic analgesics" which "is significantly important in the control of her headaches").

on May 9, 2013, Plaintiff reported to Dr. Nicolas Saikali at the DENT Headache & Neuro-Oncology Center that, after each round of Botox injections, she "continued to notice significant improvement in her migraine headaches" and was "doing overall quite well." (T.643).

Plaintiff faults the ALJ for failing to develop the record on the issue of what "stable" meant in the context of her migraine headaches. Plaintiff argues that "[t]he most glaring support that [her] 'stability' was still below the level needed to perform work in the national economy was her migraine headaches." (Pl's Reply at 4). In his decision, the ALJ noted that reports have "documented continued improvement to the point where [Plaintiff] was clinically stable and doing well, even though she still had chronic pain." (T.32). Leaving aside whether the ALJ's choice of the word "stable" was an apt one, it makes no meaningful difference to the overall analysis. Significantly, the ALJ did not misrepresent the record in discussing her migraine headaches, and clearly recognized that Plaintiff continued to experience chronic pain even though she did show improvement with treatment. There was no obligation to "develop the record" because
there were "no obvious gaps" in the administrative record, and the ALJ already possessed a "complete medical history[.]" Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotation omitted).

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is not legally flawed and is based on substantial evidence. Accordingly, it is affirmed. Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   June 15, 2017
         Rochester, New York.